UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

MARLON A. HOWELL,

Defendant.

CASE NO. CR06-260C

ORDER

This matter comes before the Court on Defendant's Motion to Suppress (Dkt. No. 16). After carefully considering Defendant's Motion and the Government's Opposition (Dkt. No. 17), after conducting an evidentiary hearing on the issue on January 17, 2007, and after considering the briefs filed by the parties after the evidentiary hearing (Dkt. Nos. 25 & 27), the Court hereby rules as follows.

**FACTS**

The facts are uncontested. On March 8, 2006, at around 9:40 a.m., Des Moines Police Officers Shawn O'Flaherty and Casey Emly received a dispatch call concerning drug dealing activity at 21635 31st Avenue South in Des Moines, Washington. The dispatch indicated that the activity was being conducted by four to five males, each with a dark complexion and in his early twenties, and one of whom was wearing a red and black jacket and a red and black baseball cap. Both Officers O'Flaherty and Emly

ORDER – 1

arrived on the scene in their marked patrol cars within three minutes, with Officer O'Flaherty arriving first.

Upon his arrival, Officer O'Flaherty saw three black males at the corner of South 219th Street and 31st Avenue South. No other individuals were observed on the street in the general vicinity. Two of the men were walking together and the third was walking behind them. The third man, who has not been identified, ran off and was not pursued by Officer O'Flaherty. The other two men, later identified as Defendant and an individual known as Carpenter, walked northbound on 31st Avenue South, crossing the street mid-block to proceed into the parking lot for an apartment complex located at 21614 31st Avenue South. The officers indicated that the particular apartment building is part of a no trespassing program in which the building owner authorizes police officers to cite individuals unlawfully on the premises.

Shortly after the two men entered the parking lot, Officer O'Flaherty ordered them to stop and return to his vehicle. Dispatch records indicate that the stop occurred at 9:45 a.m., only five minutes after the initial dispatch. The officers inquired as to why the two men were at the apartment complex. They responded that they were there to visit Chocolate, but could not provide her last name or apartment number. They indicated that she lived upstairs by pointing upwards.

The officers then asked the men for identification. Defendant provided a false name, Thomas J. Williams, which returned no record with dispatch.[1] This caused Officer O'Flaherty to suspect that Defendant had provided a false name, and he told him so. Defendant responded that he had an outstanding warrant and inquired as to whether he would be going to jail. He also provided an identification card with his true name. Dispatch records indicate that Defendant's true name was run at 9:52 a.m., seven minutes after the officers first stopped the two men.

Officer O'Flaherty placed Defendant in handcuffs while he was waiting to see whether his

---

[1] Carpenter told the officers his real name, which came back with no outstanding warrants. Officer Emly then began to issue a trespassing citation to him, which she was unable to finish because it became necessary to pursue Defendant.

ORDER – 2

identification would return a record.  When it revealed that Defendant had an outstanding warrant, Officer O'Flaherty placed Defendant under arrest and began to search him.  When Officer O'Flaherty felt a hard object at Defendant's waist, Defendant wrested out of the officer's control and began to run away, still handcuffed.  He was pursued by both officers, who deployed their tasers three times while attempting to apprehend him.  In the course of the pursuit, the handgun that was the basis of Defendant's arrest flew out of his waistband to the ground.  Defendant was finally subdued with an application of OC spray.

## ANALYSIS

Defendant moves to suppress the firearm, arguing that the officers did not have an articulable suspicion to support their stop of Defendant, and that the officers failed to appropriately limit the length and scope of the stop.  The government disputes that the stop amounted to a seizure under the Fourth Amendment, but argues that even if it did, the stop was properly supported by articulable and reasonable suspicion.

The officers' questioning of Defendant poses no Fourth Amendment problem if, as the government argues, Defendant consented to the questioning.  *Florida v. Royer*, 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions."); *see also United States v. Erwin*, 803 F.2d 1505, 1508 (9th Cir. 1986).  It is also true that "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." *INS v. Delgado*, 466 U.S. 210, 216 (1984).  What sets apart such a voluntary interrogation from a Fourth Amendment seizure is whether a reasonable person would feel free to leave.  *Id.* at 215 ("[A]n initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment, if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (internal quotation marks

ORDER – 3

omitted)); *United States v. Patino*, 649 F.2d 724, 726-727 (9th Cir. 1981).  If a reasonable person does not feel free to leave, a seizure has occurred.

If the Fourth Amendment is implicated, the Court must examine the validity of the investigatory detention by ascertaining whether the "officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20 (1968).  The inquiry into the reasonableness of the officers' actions must be based on the totality of the circumstances.  *United States v. Cortez*, 449 U.S. 411, 417 (1981).

The Court finds that once he was ordered to return to Officer O'Flaherty's car, it is unlikely that Defendant felt free to leave.  Ultimately, however, it is immaterial whether the officers conducted a *Terry* stop, or merely questioned Defendant with his consent, because the Court finds that the officers had articulable and reasonable suspicion of criminal activity as required to support a *Terry* stop.  392 U.S. at 21.  The officers had been dispatched to the scene to investigate possible drug activity.  Upon arrival, which was within three minutes of the dispatch, Officer O'Flaherty observed three individuals whose race and apparent age matched the description provided by the dispatch.[2]  One of the individuals sprinted off.  No other individuals were observed in the street.  The other two men continued into the parking lot of an apartment complex whose owner had authorized the police to cite for trespassing those without lawful business on the premises.  Given the temporal proximity between the time of the dispatch and the officers' arrival, the geographic proximity between the reported drug activity and the corner where Defendant was first observed, the similarities between the individuals described in the dispatch and those the officers saw, and the otherwise isolated neighborhood, the officers' suspicion that Defendant may

---

[2] Defendant makes much of the fact that he was not wearing the red and black baseball cap and jacket described in the dispatch.  He has demonstrated that he was in fact wearing a black jacket and black baseball cap.  Since the dispatch described the clothing of only one of the four or five individuals reported, that Defendant's clothing does not match that described in the dispatch does not show that Defendant was not among the individuals described in the dispatch, nor does it discount the similarity in age and race between the men observed by the officers and those described in the dispatch.

ORDER – 4

have been involved in the reported activity was reasonable.  Thus, the stop was justified at its inception.

Defendant also argues that the officers did not diligently pursue a means of investigation designed to quickly confirm or dispel their suspicions.  He argues that it would have only taken the officers a minute to have Defendant lead them to the apartment of their acquaintance in the building, demonstrating that they had permission to be on the premises.  There is no evidence that Defendant's stated reason for visiting the apartment complex was valid.  Indeed, Officer Emly testified that when she told Carpenter she was citing him for trespassing, he did not protest.  Moreover, the officers' suspicions were generated in part by the dispatch reporting drug activity in the area.  Even if Defendant had been able to lead the officers to the apartment of an acquaintance, the officers' actions would nonetheless have been proper. The length and scope of the stop was appropriate.

## CONCLUSION

Defendant's Motion to Suppress (Dkt. No. 16) is DENIED.

SO ORDERED this 25th day of January, 2007.

_____
John C. Coughenour
United States District Judge

ORDER – 5